# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MANUEL N. ULIBARRI,

    Plaintiff,

vs.                                                    Civ. No. 97-0845 JP/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed May 5, 1998 [10-1].  The Commissioner denied plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  Plaintiff, age 43, alleges a disability which commenced June 23, 1992, due to a back injury.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied Plaintiff's applications for benefits.  That decision was reversed by the United States District Court and the case was remanded for full consideration of Mr. Ulibarri's allegations of disabling pain and for the taking of vocational testimony regarding Mr. Ulibarri's ability to work in the national economy.  Tr. at 263.

    3.  Upon remand, however, and without taking vocational testimony, the ALJ again concluded that Plaintiff was not disabled.  The Appeals Council remanded the case to the ALJ when it found that the final decision did not comport with the Court's instruction to obtain

vocational testimony.  A third hearing was held on January 8, 1997.  The ALJ took testimony from a vocational expert and again determined that Plaintiff could work in the national economy and therefore was not disabled.  Tr. at 210.

4.   The Appeals Council denied Mr. Ulibarri's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).  Plaintiff has an eleventh grade education and has worked in the past as a dishwasher and laborer.[1]

5.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

6.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's pain analysis is not supported by substantial evidence and is contrary to law; (2) the ALJ erroneously relied upon Mr. Ulibarri's failure to seek treatment to discount his mental impairment; and (3) the ALJ relied upon testimony from a vocational expert, which does not support a finding that there are a significant number of jobs available to Mr. Ulibarri.

7.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42

---

[1] There are discrepancies in the record regarding level of education completed.  See Tr. at 278 (Plaintiff finished eighth grade); & 355 (ninth grade education).

U.S.C. §§423 (d)(1)(A)) & 1382c(a)(3)(A)).   Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

  8. At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At the fifth step, the Commissioner has the burden of producing evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

  9. Plaintiff injured his back in 1987 when picking up a 50-pound milk crate.  He complains of pain predominantly in the low back which worsens with bending, lifting and prolonged sitting.  Tr. at 188, 320.  At the last hearing, held in January 1997, Mr. Ulibarri stated that he can stand for about 20 minutes, sit for about 15 minutes and walk two blocks before the pain makes him stop and rest.[2]   In response to the ALJ's questions, Plaintiff said he is able to drive the distance from his home in Santa Fe to Albuquerque when he has to, but cannot drive straight through.  On his trip down to the hearing the day before, he told the ALJ that he had to pull over once on the way and walk in order to relieve the lower back pain.  Plaintiff takes Daypro for pain relief, Flexeril for muscle spasms and Effexor for "nervousness."  Tr. at 36, 407-08, &

---

  [2] A vocational rehabilitation evaluation reports that his back begins to hurt after walking for about 30 minutes and a medical evaluation dated May 10, 1995 states that Plaintiff can walk for almost two hours.  Tr. at 177, 355.

278. He claims that he needs to lie down to rest down to rest for about an hour four to five times a day.

**First Alleged Error - Pain Analysis**

10. Plaintiff alleges that the ALJ's pain analysis is not supported by substantial evidence and is contrary to law. Specifically, he contends that the ALJ failed to follow the federal district court's directive on remand.

11. Plaintiff's narrow interpretation of the court's order misses the basis for the remand. The court found that the ALJ "did not adequately analyze the record" in conducting a credibility analysis. Tr. at 267. In light of medical treatment notes which showed that Plaintiff complained of back pain to Dr. Baten, the district court's directive was that the Commissioner, on remand, "fully consider *all* of the evidence in evaluating Plaintiff's allegation of disabling pain" (emphasis added), and not that these notes had to be separately addressed. Id. The ALJ must consider all the evidence, but is not required to discuss every piece of evidence. Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984), cited in Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I find both that the court's order was complied with and that the ALJ's credibility determination followed the correct legal standard and was based on substantial evidence.

12. Once a nexus is established, the ALJ must consider *all* the evidence in determining whether a claimant's allegations of pain are disabling. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir.1994) (citing Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir.1987)). Factors the ALJ should consider include: the levels of medication and their effectiveness, the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities,

subjective measures of credibility that are peculiarly within the judgment of the ALJ, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991)).

13. Since this case was first remanded, it has proceeded through two hearings. In each decision following these hearings, the ALJ set out his reasons underlying the credibility determination.[3] Both decisions noted Plaintiff's ability to engage in various daily activities, Tr. at 208, 280,[4] as well as a lack of corroboration of Plaintiff's allegations of disabling pain with the objective medical findings, including a nonexistence of complaints regarding side effects of medications or Plaintiff's need to nap several times a day. Tr. at 206, 209, 279, 319; see Smallwood v. Chater, 65 F.3d 87, 88 (8th Cir. 1995); Hanna v. Chater, 930 F.Supp. 378, 389 (N.D.Iowa 1996) (need for naps should be corroborated); Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990) (medical records must be consistent with the nonmedical testimony as to the severity of the pain).

14. A finding of disability "requires more than mere inability to work without pain. . .To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986).

---

[3] The case was sent back for a third hearing by the Appeals Council because of the ALJ's failure to consult with a vocational expert as ordered by the court's remand, not because of the credibility inquiry. Tr. at 290.

[4] There is some inconsistency regarding Mr. Ulibarri's testimony of his regular activities. For example, in June 1992, he completed a questionnaire in which he stated that he went fishing "twice a month." At the second hearing in May 1996, he told the ALJ that he goes "once in a while" and that one month earlier, he had driven about a half hour to go fishing. Tr. at 398.

15. Claimant is not required to present objective medical evidence to corroborate the degree of pain. Huston v. Bowen, 838 F.2d 1125 (10th Cir. 1988); Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987). But, the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain. Luna at 165; Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993)).

16. Notes of Plaintiff's complaints of pain to Dr. Baten, when viewed in light of the whole record, do not undermine the ALJ's determination. Edgar v. Shalala, 859 F.Supp. 521 (D.Kan. 1994) (citing Talbot v. Heckler, 814 F.2d 1456, 1461)) (the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight). Most of Dr. Baten's treatment notes submitted with the record were for visits well before Plaintiff's alleged onset date[5] and not too long after the back injury occurred. Tr. at 150, 152, 267, 316.

17. The few later notes from February and June of 1992 support the ALJ's findings rather than Plaintiff's subjective testimony of disabling pain. The notes also indicate that the recurrence of worsening back pain was tied into Plaintiff's attempts to return to work which required prolonged standing or physical labor. Tr. at 149, 150, 297, 355. Even Dr. Baten formally opined that Mr. Ulibarri has an ability to perform at least sedentary to light work. Tr. at 150, 207, 298, 359; see Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995) (noting the significance of claimant's doctors encouraging him to return to work).

18. The residual functional capacities and opinions regarding Mr. Ulibarri's ability to perform work is supported elsewhere by the record. Also, the ALJ gave reasons for discounting

---

[5] The alleged date of onset is June 1992. Plaintiff's period of insured status ends on December 31, 1994. Tr. at 277.

certain objective medical evidence, including reports of other non-treating physicians who either saw Plaintiff only once or whose reports were unsubstantiated by any clinical findings. Tr. at 208, 280. These reasons were supported by substantial evidence and were legally proper.

19. This Court's review of the record, including the decisions following the federal court's remand, indicates that the ALJ's decision that Plaintiff's allegations of disabling pain is not credible is legally correct, is supported by substantial evidence and done in compliance with the court's order.

**Second Alleged Error - Mental Impairment**

20. Plaintiff next contends that the ALJ erroneously relied upon Mr. Ulibarri's failure to seek treatment to discount his mental impairment. The ALJ made a finding at step two that the character and severity of the impairment was so slight that Plaintiff's ability to perform gainful activity is not seriously affected. See Bowen v. Yuckert, 482 U.S. 137, 152 (1987).

21. Plaintiff told the ALJ that he is "always nervous." Tr. at 396, 406. He said that the problem is a result of the worry about not being able to support his family. Id. He takes Effexor for this "nervousness" anywhere from once a week to once a month, depending on his "moods." Tr. at 397.

22. The record does contain annotations of depression. Tr. at 338, 340. However, the ALJ's conclusion at step two was based on the fact that the record contained no medical findings or documentation which suggested that Plaintiff's depression had an effect on his ability to work or on any related functional limitations. Robertson v. Chater, 900 F.Supp. 1520, 1528-29 (D.Kan. 1995) (citing 20 C.F.R. § 404.1520a(b)(3) and Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 617 (10th Cir. 1995)). Although Plaintiff's treating physician was aware of

Plaintiff's depression stemming in part from his older son leaving home and the rejection of his application for disability benefits, no recommendation had been made for further evaluation, treatment or referral n this basis. Tr. at 206. The ALJ also completed a Psychiatric Review Technique Form ("PRT" form) to record these findings. Cruse, 49 F.3d at 617 (regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor at the hearing level).

23. I find that, contrary to Plaintiff's position, the ALJ did not rely on Mr. Ulibarri's failure to seek treatment to discount his mental impairment, but rather followed the appropriate and legally correct standard of inquiry into Plaintiff's alleged mental impairment.

**Third Alleged Error - Vocational Testimony**

24. Last, Plaintiff alleges that the ALJ relied upon testimony from a vocational expert, which does not support a finding that there are a significant number of jobs available to Mr. Ulibarri. The vocational expert ("VE") consulted by the ALJ stated that Mr. Ulibarri could perform the job of parking attendant, even considering the limitations which Dr. Baten placed on him. Tr. at 113. The expert opined that there were 100 such jobs in New Mexico and 7,500 nationally. Plaintiff's main contention is that because the VE's testimony concerns the number of jobs in the national instead of regional economy, the ALJ was in error to rely on this information in order to satisfy the Commissioner's burden at step five.

25. As support for this contention, Plaintiff relies on Jenkins v. Bowen, an Eighth Circuit case, for the requirement that the Commissioner must show that Plaintiff can engage in work which exists in significant numbers "in the region in which [plaintiff] lives." Reply at 2 (citing to Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir.1988)). However, the relevant statute, 42

U.S.C. § 423(d)(2)(A), controlling even Jenkins, states that "significant numbers" of jobs can be shown to exist *"either* in the region where such individual lives or in several regions of the country." (emphasis added).

26. The Jenkins court found that a relevant job market of 500 jobs constituted "significant numbers" in the local economy. 861 F.2d at 1087. However, in Trimiar v. Sullivan, the Tenth Circuit cited Jenkins merely for a statement of the criteria that the court should include in a proper evaluation of what constitutes "significant numbers"-- not as support for the proposition that the Commissioner must show that a significant numbers of jobs exist in the *regional* economy in order to satisfy a step five inquiry.[6] See 966 F.2d 1326, 1330 (10th Cir. 1992).

27. Local hiring practices, employer preferences for physically whole workers, and the claimant's actual chances of being hired are irrelevant considerations. See Lopez v. Sec. HEW, 512 F.2d 1155 (1st Cir.1975) (Commissioner's burden extends only to showing that there are specific jobs in the national economy which the claimant is capable of performing).

28. Further, the fact that there was not a significant number of "tire coater" positions either locally (none in New Mexico) or nationally (200 jobs), Tr. at 410, has no significance here. The Commissioner need only prove that one or two occupations exist which have a significant number of positions either regionally or nationally, not that many occupations need to be available to the claimant. See Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). The Commissioner

---

[6] Examples of such criteria are: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. Trimiar at 1330 (citing Jenkins v. Bowen, 861 F.2d at 1087).

must identify and establish the claimant's ability to perform some specific occupation(s) which--however few in themselves-- encompass a significant number of available jobs.  See  20 C.F.R. S 404.1566(b) ("Work exists in the national economy [for step-five purposes] when there is a significant number of jobs (in one or more occupations ) having requirements which [the claimant is] able to meet...." (emphasis added)).

29.   The vocational testimony in this case satisfies the requirements imposed by the social security regulations and Tenth Circuit caselaw.  The ALJ considered factors specific to Plaintiff's case, Tr. at 404-05, 210, and did not incorrectly rely on this testimony in finding that Mr. Ulibarri could perform a significant number of jobs in the regional or national economy.

30.   In sum, I find that: (1) the ALJ's pain analysis is supported by substantial evidence and is not contrary to law; (2) the ALJ did not incorrectly rely upon Mr. Ulibarri's failure to seek treatment to discount his mental impairment; and (3) the ALJ was not in error in relying upon testimony from a vocational expert regarding the existence of a significant number of jobs available to Mr. Ulibarri.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing [10-1]  be denied and this cause of action be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE